Mary Sunshine Burrow
COOK, Appellant,

v.

Flake TOMPKINS et al, Appellees.

No. 11–86–050–CV.

Court of Appeals of Texas,
Eastland.

July 17, 1986.

---

James C. Gordon, McMahon, Smart, Surovik, Suttle, Buhrmann & Cobb, Abilene, for appellant.

James P. Boldrick, Boldrick & Clifton, Steve Stewart, Stewart & Hofer, John C. Steinberger, Kerr, Fitz-Gerald & Kerr, Midland, Kevin MacEwan, Wagstaff, Alvis, Stubbeman, Seamster & Longacre, Abilene, for appellees.

## OPINION

DICKENSON, Justice.

The owner of an undivided mineral interest [1] sued her lessee,[2] his assignee,[3] and other parties [4] who acquired interests in the oil and gas lease to recover unpaid royalties on oil which was produced by virtue of the lease. The oil purchaser [5] is in bankruptcy. Following a nonjury trial, judgment was rendered that plaintiff take nothing. She appeals. We affirm.

The trial court made findings of fact and conclusions of law pursuant to TEX.R. CIV.P. 296. They read in full as shown below:

### FINDINGS OF FACT

1. Plaintiff, Mary Sunshine Burrow Cook, owns a one-quarter (¼) undivided mineral interest in and under the SE/4 of Section 261, Block 1A, H&TC ry. Co. Survey, Coke County, Texas, subject to a one-sixteenth (¹⁄₁₆) non-participating royalty interest in James Booth.

1. Mary Sunshine Burrow Cook owned an undivided one-fourth mineral interest. She executed an Oil, Gas and Mineral Lease on June 15, 1978, covering this interest. The lease did not show her address, and the assignee who operated the lease did not furnish that address to the law firm which prepared the division order title opinion. She did not own the surface estate, and she did not reside in the county where the land was located.

2. Mann Rankin was the original lessee. He executed an assignment on October 9, 1978, of the four leases covering the oil and gas rights in the 160 acre tract involved in this litigation. Rankin reserved a ¹⁄₃₂ of ¹³⁄₁₆ overriding royalty interest with the option to convert that interest to a ⅛ of ¹³⁄₁₆ working interest after the payout of each well drilled on this tract.

3. Hulon Lemon is the assignee who became the lease operator. He drilled four wells on this tract after selling undivided interests to various investors. He sold the oil to Basin, Inc. The claim against him has been severed and docketed as a separate cause of action.

4. A.C. Thames acquired one-half of the overriding royalty interest reserved by Mann Rankin in his assignment to Hulon Lemon. Flake Tompkins, Steve Shugart, Dwayne Shugart, Autry Stephens, Joe Bill Phillips, Bill E. McAnelly, Estelle Lemon, Donald W. Lemon, Mike Doan, Gary Doan, and Wesley Dalley acquired undivided working interests from Hulon Lemon. They were non-operator investors. The record shows that Estelle Lemon settled with appellant, and the cause of action against her has been dismissed with prejudice. The record further shows that Hulon H. Lemon and Donald W. Lemon had not been served with citation when the case was reached for trial, and the claims against them were severed and docketed as a separate lawsuit.

5. Basin, Inc. bought all of the oil from the four wells on this tract from the date of first production until it filed for bankruptcy. Appellant filed a claim in the bankruptcy proceeding for the sum of $163,727.78. She received two payments from the bankruptcy court ($98,561.40) and a small settlement from Estelle Lemon ($1,500 based upon her 2% working interest), leaving a claimed balance due of $65,166.38.

2. On June 5, 1978 Defendant, Mann Rankin, Leased said one-quarter undivided mineral interest for purposes of oil and gas exploration.

3. On October 9, 1978 Defendant, Mann Rankin, assigned the Cook lease, among others, to Hulon Lemon reserving a $\frac{1}{32}$ of $\frac{3}{16}$ overriding royalty interest convertible to a $\frac{1}{8}$ working interest after payout.

4. On November 14, 1978 Defendant Mann Rankin assigned $\frac{1}{2}$ of the interest reserved to Defendant, A.C. Thames.

5. In March of 1979 Hulon Lemon as operator drilled Arledge No. 1 well on the Cook lease.

6. On April 16th, 1979 Hulon Lemon assigned various percentages of the working interest to Defendants Flake Tompkins, Steve Shugart, Dwayne Shugart, Autry Stephens, Joe Bill Phillips, Bill E. McAnelly, Estelle Lemon, Donald W. Lemon, Mike Doan, Gary Doan and Wesley Dalley.

7. The assignment was admitted into evidence Exhibit No. 4. Hulon Lemon orally contracted with Basin Inc. to purchase the oil produced from wells drilled on the Cook lease.

8. Hulon Lemon orally contracted with Sun Production Co. to purchase the gas produced from the Cook lease.

9. Mrs. Cook made no provision for the separate storage, treatment, or transport of her proportionate part of the oil produced.

10. On May 3, 1979 Basin Inc., by letter, delivered its division order to all working interest and royalty owners. Such division order was not directed to Mrs. Cook as Basin Inc. did not have her address. The transmittal letter with division order inquired as to Mrs. Cook's address from all interest owners. A.C. Thames did not receive the letter of May 3, 1979.

11. Basin Inc. suspended Mrs. Cook's royalty payment from date of first production to June 1982 as a result of not receiving an executed division order from her.

12. In June of 1982 Basin Inc. filed for Chapter 11 bankruptcy protection.

13. Mrs. Cook did receive, execute and return a Sun Production Company gas division order and was paid her proportionate part of gas runs.

14. In June of 1979, Hulon Lemon completed the Arledge No. 2 and No. 3 Wells on the Cook Lease.

15. In August of 1979, Hulon Lemon completed the Arledge No. 4 Well on the Cook lease.

16. On September 17, 1979, Hulon Lemon and the various working interest assignees conveyed a $\frac{1}{8}$ of $\frac{3}{16}$ working interest to Mann Rankin and A.C. Thames in equal shares. As of that date, there was nothing of public record in Coke County, Texas indicating Mrs. Cook had not received the Basin, Inc. oil division order.

17. As of June, 1982, Basin had in suspense the sum of $163,727.00 attributable to Mrs. Cook's royalty interest.

18. In July of 1983, Mrs. Cook was notified that the suspense account existed and of the Basin, Inc. Chapter 11 bankruptcy proceedings.

19. Mrs. Cook filed a claim in the Basin, Inc. bankruptcy proceedings and executed a division order to Basin, Inc.

20. As a result, she received two distributions from Basin, Inc. in the total sum of $98,561.40.

21. Mrs. Cook is knowledgeable in oil and gas matters.

22. Hulon Lemon operated the Arledge wells on the Cook lease from the date of initial drilling to April 1, 1984 when PED became the operator.

23. None of the non-operating working interest owners participated or shared in operation or control of the four wells drilled on the Cook lease.

24. The custom in the oil industry when a royalty owner fails to separately market his or her proportionate part of oil is that the lessee contracts with the crude purchaser for the royalty owner's benefit.

25. Oil production from the wells located on the Cook lease was trucked from the location, as the wells were not connected to an oil pipeline.

26. The custom in the oil industry is that the crude purchaser attempts to locate all royalty owners in order that they might execute division orders.

27. It is the further custom in the oil industry that a crude purchaser will not pay without receipt of an executed division order.

28. The oral contract between Hulon Lemon and Basin, Inc. was for the generally posted price and upon the customary terms for such contracts for that place and time.

## CONCLUSIONS OF LAW

1. Plaintiff's cause of action is not barred by the statute of limitations.

2. The assignment of the Cook lease by Mann Rankin did not alleviate him of his obligation under the terms and covenants of said lease.

3. The oil and gas lease between Mrs. Cook and Mann Rankin obligates the lessee to deliver the lessor's proportionate part of production in kind to the lessor directly or for her credit to a crude oil purchaser.

4. In addition, the oil and gas lease between Mrs. Cook and Mann Rankin created an implied duty on the part of the lessee to market Mrs. Cook's oil as would a reasonably prudent operator.

5. Mrs. Cook's failure to separately market or store her proportionate part of royalty oil constituted implied authorization to the lessee to market her oil on her behalf.

6. The implied duty to market and the lessee's duty under the royalty clause were met and satisfied by Hulon Lemon's contract with Basin, Inc. for the sale of Mrs. Cook's oil.

7. Upon sale to Basin, Inc., title to Mrs. Cook's oil passed to Basin, Inc. and Mrs. Cook, at that time, was limited to a contract claim against Basin, Inc.

8. Mrs. Cook's execution of the Basin, Inc. division order covering runs from date of first production constituted a ratification of Hulon Lemon's sale of her oil and limited her to a contract claim against Basin, Inc.

9. The lessee's implied duty to market does not include the duty to notify Basin, Inc. of Mrs. Cook's address, nor does it include the duty to pay in the event the crude purchaser does not or cannot.

10. The implied duty to market extends only to the lessee not to overriding royalty interest owners.

11. A holder of an overriding royalty interest has no duty under the implied duty to market or otherwise to furnish the address of another royalty owner to the crude purchaser or pay any portion of sums due from the crude purchaser to the royalty owner.

12. The conversion from an overriding royalty interest to a working interest did not obligate A.C. Thames to pay any part of the royalties due the Plaintiff from Basin, Inc.

13. There was no joint operation and control of the operation of the wells located on the Cook lease as between the operator and the working interest owners.

Appellant presents seven points of error. First, she argues that the trial court erred in concluding (C.L. 6 and 9) that the implied duty to market was met and satisfied by Hulon Lemon's contract with the oil purchaser; in further concluding that the duty to market did not extend to a requirement that the lessee and his assignees furnish the oil purchaser with the royalty owner's address, nor a duty to guarantee the payment if the oil purchaser fails to pay. Appellant argues that the lessee and all of his assignees have a duty, pursuant to implied agency, to collect and deliver the proceeds from the sale of oil under appellant's lease. This point of error is overruled.

All parties agree that a conventional oil and gas lease is subject to an implied covenant to market the oil and gas produced

pursuant to the lease.[6]  See, e.g., 5 WILLIAMS AND MEYERS, OIL AND GAS LAW secs. 853 and 855 (Mathew Bender & Company 1985).[7]  These authors suggest that the elements of a cause of action for breach of this implied covenant are: (1) discovery of oil or gas on the leased premises; (2) failure to sell the product; (3) ability of a prudent lessee to sell the product through the exercise of reasonable diligence; and (4) damage to the lessor as a result of the lessee's failure to obtain a market.

In response to the trial court's question after all parties had closed and finished their summations, appellant's counsel stated:

The main support of our position is in the Williams & Meyers treatise.... There is no case like this one on the books ... where the oil purchaser set up a suspense account and nobody noticed it, and then went bankrupt. There is no case like that.

All parties' counsel agree that this is a case of first impression.  We hold that the lease operator complied with the implied covenant to market the oil when he sold the production to Basin, Inc. at the current market price.  We also hold that this implied covenant does not impose a duty upon the lessee, his assignee, and all other parties owning an interest in the lease to make sure that the oil purchaser has the lessor's address.  When the royalty oil was delivered to the purchaser for the lessor's account, the implied covenant to market was satisfied.  The lessee, his assignee, and the other parties who own interests in the lease are not obligated to warrant or guarantee payment to the lessor for the oil which was delivered and credited to the account of the lessor.

Next, appellant argues that the trial court erred in concluding (C.L. 10, 11, and 12), and in failing to make requested contrary conclusions, by reasoning that the duty to market extends only to the working interest owners and not to A.C. Thames as an overriding royalty interest owner.  This second point becomes immaterial in view of our holding that there was no breach of the implied duty to market the appellant's royalty oil.

Next, appellant argues that the trial court erred in concluding (C.L. 7 and 8) that appellant is limited to an action against the oil purchaser only because: (Point 3) the implied duty to market was not satisfied merely by the sale of appellant's oil; and (Point 4) the execution of the division order did not ratify the sale of appellant's oil.  Point of Error No. 3 is overruled for the reasons stated in our discussion of appellant's first point.  Point of Error No. 4 becomes immaterial in view of our holding that there was no breach of the implied duty to market.

The final three points of error deal with the trial court's refusal to make requested findings of fact as to: (Point 5) Mann Rankin's receipt of notice that Basin, Inc. did not have an address for appellant and his apparent failure to notify appellant or to furnish her address to the purchaser; (Point 6) the amounts of the joint and several liability of appellees for the unpaid amount due to appellant; and (Point 7) the amount due for attorney's fees.  These three points become immaterial in view of our holding that there was no breach of the

6. The royalty provision in the lease provided: "The royalties to be paid by Lessee are: (a) on oil, and on other liquid hydrocarbons saved at the well, [3/16] of that produced and saved, same to be delivered at the wells or to the credit of Lessor in the pipelines to which the wells may be connected."

7. The leading case is *Wolfe v. Texas Co.*, 83 F.2d 425 (10th Cir.1936), *cert. denied,* 299 U.S. 553, 57 S.Ct. 15, 81 L.Ed. 407 (1936).  The court held that the lessee's assignee had implied authority to sell the royalty oil, at the posted price and on the customary terms, as it was produced.  83 F.2d at 430.  The court also held that in the absence of an express provision in the lease, there is an implied duty on the part of the lessee to make diligent efforts to market the production in order for the lessor to realize a recovery on his royalty interest.  83 F.2d at 432.  *Wolfe* does not suggest that the lessee must guarantee the payment by the purchaser where the lessor's portion of the oil is delivered to the purchaser "to the credit of lessor."

implied covenant imposing a duty to market appellant's oil.

The judgment of the trial court is affirmed.